UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Union Central Life Insurance Company,
    Plaintiff-Counter Defendant,

        Case No. 1:09-cv-00758

v.

        Weber, J.
John Eftin Andraos, *et al.*,        Litkovitz, M.J.
    Defendants-Counter Claimants.

ORDER TO SHOW CAUSE
AND
REPORT AND RECOMMENDATION

This matter is before the Court on plaintiff's motion for partial summary judgment (Doc. 41), defendants' opposing memorandum (Doc. 44), and plaintiff's reply memorandum (Doc. 45). Also before the Court is plaintiff's motion to dismiss certain counterclaims filed by defendants (Doc. 52) and the parties' responsive memoranda. (Docs. 55, 57). This Court has diversity jurisdiction over this breach of contract action pursuant to 28 U.S.C. § 1332.

**I. Background and Facts**

On September 1, 2007, Union Central Life Insurance Company ("Union Central") and Andraos Capital Management ("ACM") entered into a contract ("Broker Contract") whereby ACM would solicit and sell Union Central's insurance products. (Doc. 1, ¶ 6). John Andraos, the CEO of ACM, was hired by Union Central for this purpose and entered a separate contract ("Branch Manager Contract"). (Doc. 7, Ex. D).

The parties' relationship eventually soured and the contracts were terminated approximately two years later in September of 2009. (Doc. 1, ¶ 10; Doc. 14 at 3). In the instant action, Union Central sued defendants John Andraos and ACM for defaulting on two promissory

notes, totaling $450,00.00, which Union Central had advanced to defendants. Andraos signed both notes as CEO of ACM. (Doc. 1, Ex. B, C). Note 1 in the amount of $200,000.00 (dated September 4, 2007) was for "ramp-up costs" for defendants' insurance agency. (Doc. 7, Andraos Aff., ¶ 11). Note 2 (dated January 22, 2009) was executed as a temporary fix after Union Central rejected defendants' reimbursement request for December 2009. (*Id.*, ¶ 12; Doc. 1, Ex. B, C). Both notes provide that payment is to be made at plaintiff's office in Forest Park, Ohio. Both notes specify that they "shall in all respects be governed by, and construed in accordance with the laws of the State of Ohio, including all matters of construction, performance, validity and lawful interest rate." *Id.*

Meanwhile, John Andraos, a citizen of California, filed suit against Union Central and one hundred of its unnamed Ohio employees in the Superior Court of California, Los Angeles County, Case No. BC418586, alleging breach of covenant of good faith and fair dealing, breach of fiduciary duty, breach of contract, and unfair business practices under California state law. (Doc. 7-4 at 2; Doc. 8, Ex. B ). That state case was removed to a California federal court, which enforced the arbitration clause in the Branch Manager Contract and ordered the parties to arbitrate their claims. (Doc. 14 at 3). The parties indicate that the case was subsequently dismissed on February 9, 2010. (Doc. 19, at fn.2, referring to Case No. 2:09-cv-8815 (C.D. Ca. 2010)).[1]

Pursuant to the arbitration clause in the Broker Contract, plaintiff Union Central (a Nebraska corporation with its principal place of business in Forest Park, Ohio), separately filed

---

[1] "Federal courts may take judicial notice of proceedings in other courts of record" and the undersigned has done so here by obtaining the pleadings and decisions from the California federal court. *See Granader v. Public Bank*, 417 F.2d 75, 82-83 (6th Cir. 1969); *See also Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980).

for AAA arbitration of the claims arising out of that contract. (Doc. 1, Ex. A at 7; Doc. 7, Ex. E). The Broker Contract specified that the parties' claims would be arbitrated in Nebraska. (Doc. 1, Ex. A at 7).

In the present case, Andraos[2] filed a motion to dismiss the complaint pursuant to Rule 12(b)(2), (3), and (6) of the Federal Rules of Civil Procedure, asserting 1) lack of personal jurisdiction, 2) improper venue and/or forum non conveniens, and 3) failure to state a claim upon which relief may be granted. (Doc. 7 at 5). Andraos also asked the Court to abstain due to the pending arbitration that is addressing similar if not the same claims.

On November 30, 2010, the parties informed the Court that the Nebraska arbitration had been consolidated with the California arbitration by agreement of the parties. (Doc. 22, Ex. B at 5, ¶ 26-28). In the consolidated arbitration, Andraos asserted counterclaims, including wrongful discharge, retaliation in violation of public policy, intentional infliction of emotional distress, and promissory fraud. (Doc. 22, Ex. B at 1). On December 1, 2010, the arbitration was suspended for thirty days due to defendants' failure to pay their share of the arbitration fees. (Doc. 35, Ex. A). The Suspension Order stated that if Union Central "wishes to pursue these claims, it has the right to advance [Andraos'] share of fees, and seek to recover those from respondents at the end of the case." *Id.* The Order further stated that if fees were not deposited within thirty days the case would be dismissed. *Id.* at 2. The arbitration was terminated on January 7, 2011 after the requisite deposits for the arbitration fees were not paid. (Doc. 40, Ex. A).

In this case, the Court denied Andraos' motion to dismiss on December 8, 2010. (Doc. 36). The Court found that the case pending in arbitration and the claims currently before the

---

[2] Defendants John Andraos and ACM are hereinafter referred to collectively as "Andraos."

Court relating to the promissory notes were not "sufficiently parallel to warrant abstention." (Doc. 36 at 6). In so concluding the Court noted that "[a]lthough the parties indicate that the amount due on the two allegedly defaulted promissory notes may provide a set-off to any potential award in the arbitration, the alleged default on the notes is a separate legal matter from the causes of action being arbitrated." *Id.* at 5-6. The Court further found that "a substantial portion of the events or omission giving rise to the claims (relating to the promissory notes) occurred in Ohio" and therefore the exercise of personal jurisdiction over Andraos was proper. *Id.*

On January 4, 2011, just three days before the arbitration was terminated, Andraos filed its answer to the complaint which included the following eleven counterclaims: breach of Branch Manager Contract, breach of Broker Contract, breach of Oral Agreement, breach of covenant of good faith and fair dealing, breach of fiduciary duty, promissory fraud, retaliation in violation of public policy, wrongful discharge in violation of public policy, and intentional infliction of emotional distress. (Doc. 39). The counterclaim asserts the same eleven causes of actions that the parties agreed to resolve through arbitration and that were previously pending before the arbitration panel. *Id.*

With respect to the allegations in the complaint, Andraos admits that ACM executed Notes 1 and 2. (Doc. 39, ¶¶ 7, 14). Andraos further admits that it has not made payment on Note 2 prior to April 15, 2009 and has not made payment on Note 1 prior to October 15, 2009. (Doc. 39, ¶¶ 11, 16). Andraos' answer denies the remaining allegations in Union Central's complaint.

On January 14, 2011, Union Central filed a motion for partial summary judgment asserting that it is entitled to judgment as a matter of law on its claims against Andraos and ACM

-4-

for breach of Notes 1 and 2. (Doc. 41). Union Central asserts that there is no dispute at to any material fact because Andraos' answer to the complaint admits that ACM executed Notes 1 and 2 and that Andraos failed to pay the outstanding balances according to the terms of the Notes. *Id.*

On March 16, 2011, Union Central filed a motion to dismiss Andraos' First, Fourth, Sixth, Eighth, Ninth, and Tenth causes of action contained in the counterclaim for failure to state a claim upon which relief may be granted. (Doc. 52).

Thereafter, on March 18, 2011, just two days after Union Central filed its motion to dismiss defendants' counterclaims, Andraos filed a motion to vacate dismissal and amend complaint in the case previously pending in the United States District Court for the Central District of California. *See Andraos, et al v. The Union Central Life Ins. Co.*, Case No. 2:09-cv-8815, Doc. 40 (C.D. Ca. 2010). The motion asked the Court to reopen the previously dismissed case because the arbitration was terminated due to Union Central's failure to pay its share of arbitration costs.[3] *Id.* The California court denied Andraos' motion finding that "[n]othing has changed since this Court compelled arbitration over a year ago." *Id.* at Doc. 44.

## II. Union Central's motion for summary judgment fails to establish that it is entitled to judgment under Ohio law.

Union Central filed a motion for partial summary judgment on January 14, 2011, asserting that it is entitled to judgment as a matter of law on its claims against Andraos for breach of Notes 1 and 2. (Doc. 41). Union Central asserts that there is no dispute as to any material fact because Andraos' answer to the complaint admits that he executed Notes 1 and 2 and failed to pay the outstanding balances according to the terms of the Notes.

---

[3] This assertion is erroneous, as the arbitration panel clearly stated that defendant Andraos failed to pay its share of arbitration costs. (Doc. 35, Ex. A)

Andraos, however, argues that the promissory notes at issue were part of an overall contractual relationship between Andraos and Union Central. Andraos asserts that Notes 1 and 2 were executed in conjunction with the Branch Manager and Broker Contracts. Andraos further asserts that Union Central failed to comply with its obligations under the Branch Manager and Broker Contracts and has therefore breached the terms of those agreements. As a result, Andraos maintains that Union Central's breach of the Branch Manager and Broker Contracts excused his performance on Notes 1 and 2. *See England v. O'Flynn,* Case No. 18952, 2002 WL 27314, at *9 (Ohio App. 2 Dist. Jan. 11, 2002) (affirming decision determining that defendant was not obligated to pay on promissory note when plaintiff had materially breached other related contracts). Thus, Andraos argues that summary judgment is premature and improper as the issues related to the other contracts have not yet been addressed by the Court. In its reply memorandum, Union Central asserts that the mere existence of a counterclaim is not the equivalent of setting out specific facts showing genuine issues of material fact exist thereby precluding summary judgment. (Doc. 45).

Upon careful review, the undersigned finds that Union Central has not provided sufficient evidence establishing that it is entitled to judgment as a matter of law based on the record currently before the Court.[4]

Under Ohio law, once a default in payment has occurred under the terms of a note, and once the note has been accelerated, the holder of the note is entitled to judgment. *King v. Safford,* 19 Ohio St. 587 (Ohio 1869); *Union Cent. Life Ins. Co. v. Curtis*, 35 Ohio St. 357 (Ohio 1880); *Bradfield v. Hale*, 65 N.E. 1008 (Ohio 1902); *Evilsizor v. Speckbaugh*, 88 N.E. 2d 296

---

[4] Because Union Central has failed to meet its initial burden under Rule 56, the undersigned declines to address the merits of Andraos' arguments in opposition to Union Central's motion at this time.

(Ohio App. 2 Dist. 1949).

As noted above, Union Central moves for summary judgment based solely on Andraos' answer to the complaint. Andraos' answer, standing alone, is insufficient to establish that Union Central is entitled to judgment on the Notes under Ohio law. In that regard, Andraos' answer admits to the execution of Notes 1 and 2. (Doc. 39, ¶¶ 7, 14). The answer also admits that Andraos has not made payment on Note 2 prior to April 15, 2009 and has not made payment on Note 1 prior to October 15, 2009. (Doc. 39, ¶¶ 11, 16). However, Andraos' answer denies the remaining allegations in Union Central's complaint. Notably, Andraos denies Union Central's allegation that the Broker Contract was terminated on September 30, 2009, which constituted an event of default under Note 1 thereby requiring payment on Note 1 on October 15, 2009. (Doc. 39, ¶¶ 8, 10). Andraos' answer also denies Union Central's allegation that the "due date" for payment on Note 2 was March 31, 2009. *Id.* at ¶ 14.

Although Andraos' answer admits that the notes were properly executed and that they were not paid prior to April 15, 2009 and October 15, 2009, the answer does not admit that the Notes were due and payable pursuant to the terms of the Notes. In that regard, Andraos' answer does not constitute sufficient evidence to establish that a default in payment has occurred under the Notes and that the Notes are therefore due and payable.

Union Central does not offer any additional evidence in support of its allegation that the Broker Contract was terminated on September 30, 2009, an event which constituted default under the Notes. Furthermore, Union Central's allegation that Andraos failed to satisfy Note 2 within 15 days of its "due date" of March 31, 2009 is also unsupported by any evidence. Note 2 states that a default occurs if the borrower "fail[s] to make payment on any part of the principal

-7-

due on this Note within 15 days after the applicable due date." (Doc. 1, Ex. C). However, Note 2 does not define the due date. Note 2 states that "payments are to be made pursuant to and in accordance with the terms and conditions of the attached January 22, 2009 letter agreement, and the Branch Manager Contract." *Id.* The January 22, 2009 letter has not been provided to the Court and the Branch Manager Contract does not define the due date of Note 2, nor mention the existence of Notes 1 or 2.

Union Central's motion for summary judgment also attaches the affidavit of Robert F. Verbryke, Union Central's Vice President. Mr. Verbryke's affidavit verifies the accuracy of the Notes and the Broker Contract, but does not contain any additional information relating to the termination of the Broker Contract or the due date of Note 2.

Based on the foregoing, the evidence provided by Union Central in support of its motion for summary judgment establishes only that the Notes were properly executed and that Andraos has not made payment on the Notes prior to April 15 and October 15, 2009. Although the complaint alleges that the Notes were due and payable, Union Central has failed to provide any evidence in support of those allegations (*i.e.*, evidence establishing the termination of the Broker Contract and evidence of the "due date" of Note 2). As such, Union Central has not established that it is entitled to judgment on the Notes under Ohio law. Because the initial burden on summary judgment is on the moving party to conclusively show no genuine issues of material fact exist and that it is entitled to judgment as a matter of law, *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003), and Union Central has not met this initial burden, Union Central's motion for partial summary judgment should be denied.

**III. Union Central's motion to dismiss Andraos' counterclaims should be denied without prejudice, subject to refiling, after the Court determines whether such claims are subject to binding arbitration.**

As outlined above, Andraos' answer includes the following eleven counterclaims: breach of Branch Manager Contract, breach of Broker Contract, breach of Oral Agreement, breach of covenant of good faith and fair dealing, breach of fiduciary duty, promissory fraud, retaliation in violation of public policy, wrongful discharge in violation of public policy, and intentional infliction of emotional distress. (Doc. 39). Andraos' counterclaim asserts the same eleven causes of action that the parties agreed to resolve through arbitration and that were previously pending before the arbitration panel.

Specifically, the Branch Manager and Broker Contracts provide that "[a]ny controversy or claim in excess of $15,000.00 arising out of or relating to [the Branch Manager and Broker Contract] or any breach of th[e] Contract . . . shall be finally settled by arbitration administered by the American Arbitration Association ("AAA") in accordance with its Commercial Arbitration Rules and the Federal Arbitration Act." (Doc. 1, Ex. A at 7; Doc. 7, Ex. D at 16-17). Both the Branch Manager and Broker Contracts also include the following provision:

> The decision or award of the arbitrator shall be final, binding and enforceable. The decision of the arbitrator shall be in writing and shall set forth in reasonable detail the basis for the decision. Application may be made to any court of competent jurisdiction for judicial acceptance of the arbitration award and enforcement, as the law of the state having jurisdiction may require or allow.

*Id.*

The United States District Court for the Central District of California previously decided that the arbitration provision in the Branch Manager and Broker Contract was valid and

enforceable. *See Andraos, et al v. The Union Central Life Ins. Co.*, Case No. 2:09-cv-8815, Doc. 30, 39, (C.D. Ca. 2010). As a result, the California court granted Union Central's motion to compel arbitration and dismissed Andraos complaint arising under those agreements. *Id.* The arbitration was subsequently terminated as a result of the parties' failure to deposit the requisite arbitration fees prior to a final decision or award of the arbitrator on the merits of the parties claims. The California court further determined that the dismissal of the action should not be vacated in light of the termination of the arbitration. *Id.* at Doc. 44.[5]

Furthermore, in support of its earlier filed motion to dismiss for lack of jurisdiction Andraos asserted that the Court should abstain from deciding this case because the parties agreed to settle all claims relating to the Branch Manager and Broker Contracts through arbitration. (*See* Doc. 22). Andraos argued, *inter alia*, that the Court should abstain from deciding this case because the pending arbitration involves "the entire scope of the financial dealings between the parties, including expense reimbursement issues . . ." (Doc. 22 at 3). Andraos further asserted that the law strongly favors arbitration over court proceedings when the parties have so agreed. *Id.* at 1. Thus, Andraos' own arguments to the Court indicate that his counterclaims are subject to binding arbitration.

For reasons unknown to the Court, Union Central's motion to dismiss Andraos'

---

[5] *See also Cambridge Marketing, L.L.C. v. Young*, Case No. 03-2557, 2006 WL 266611, at *3 (W.D. Tenn. Feb. 1, 2006) (denying motion to lift stay after arbitration proceeding was terminated due to parties' failure to pay arbitration costs ); *Williams v. Tully*, Case No. C-02-05687, 2005 WL 645943, at *1 (N.D. Cal. March 18, 2005) (finding that plaintiff failed to set forth any basis for reconsideration of the Court's order compelling arbitration or vacating the arbitrator's order terminating the arbitration as a result of a failure to pay arbitration fees). In *Cambridge*, the Court noted that if one party paid its share of the requisite fees and reopened the arbitration proceedings and the other party again failed to pay its share of fees, the Court would consider a renewed motion to lift the stay. *Cambridge*, 2006 WL 266611 at *3.

counterclaims does not assert that Andraos' counterclaims are subject to binding arbitration nor does Andraos address the effect, if any, of the termination of the arbitration proceeding on his counterclaims in his responsive memoranda. In light of the foregoing, it appears that Andraos' counterclaims are subject to binding arbitration and are not properly before the Court at this time. Accordingly, the undersigned finds that Union Central's motion to dismiss Andraos' First, Fourth, Sixth, Eighth, Ninth, and Tenth counterclaims should be denied without prejudice subject to refiling, if necessary, after the Court resolves all issues relating to arbitration.

### IT IS THEREFORE RECOMMENDED THAT:

1. Union Central's motion for partial summary judgment (Doc. 41) should be **DENIED**.

2. Union Central's motion to dismiss certain counterclaims brought by defendant Andraos (Doc. 52) be **DENIED** without prejudice.

Additionally, the parties are herein **ORDERED TO SHOW CAUSE,** in writing and within **thirty (30) days** of the filing date of this Order, why Andraos' counterclaims should not be dismissed or stayed pending the arbitration of such claims resulting in a final decision or award.[6]

Date: 8/5/2011

Karen L. Litkovitz
United States Magistrate Judge

---

[6] Section 10(d) of the Federal Arbitration Act confers jurisdiction on the district court only when the arbitrators have made a "final" award. *See* 9 U.S.C § 10(d).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Union Central Life Insurance Company,
    Plaintiff-Counter Defendant,

    v.

John Eftin Andraos, *et al.*,
    Defendants-Counter Claimants.

Case No. 1:09-cv-00758

Weber, J.
Litkovitz, M.J.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Am,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).