UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Union Central Life Insurance Company,<br>    Plaintiff-Counter Defendant, | Case No. 1:09-cv-758 |
| v. | Weber, J.<br>Litkovitz, M.J. |
| John Eftin Andraos, *et al.*,<br>    Defendants-Counter Claimants. | |
| Union Central Life Insurance Company,<br>    Plaintiff, | Case No. 1:11-cv-75 |
| v. | Weber, J.<br>Litkovitz, M.J. |
| John Eftin Andraos,<br>    Defendant. | |

**REPORT AND RECOMMENDATION**

This matter is before the Court pursuant to the Court's Order to Show Cause as to why defendants' counterclaims should not be dismissed or stayed pending arbitration. Case No. 1:09-cv-758 (Doc. 59).[1] Defendants and plaintiff have submitted responses (Docs. 64 and 65) and replies (Docs. 68 and 69) respectively.

**I. Introduction**[2]

Plaintiff, Union Central Life Insurance Company ("Union Central"), filed the instant lawsuit against defendants John Andraos and Andraos Capital Management ("Andraos") alleging default on two promissory notes. (Doc. 1). Meanwhile, defendants filed suit in California state court against Union Central alleging various violations related to the underlying employment contracts (the Branch Manager and Broker contracts) that gave rise to the promissory notes. (Doc. 7, Ex. 4, p. 2; Doc. 8, Ex. B). Both the Branch Manager and Broker contracts contained

---

[1] The Court issued an identical Show Cause Order in Case No. 1:11-cv-75, Document 20. The issue of whether to stay both matters pending arbitration is the same for both cases. However, for purposes of clarity, references to document numbers in this Report and Recommendation shall be to Case No. 1:09-cv-758.

[2] A thorough factual background was recited in this Court's August 5, 2011 Order to Show Cause (Doc. 59) and will not be repeated here.

the following arbitration clause: "Any controversy or claim in excess of $15,000.00 arising out of or relating to [the Branch Manager and Broker Contract] or any breach of th[e] Contract . . . shall be finally settled by arbitration administered by the American Arbitration Association ("AAA") in accordance with its Commercial Arbitration Rules and the Federal Arbitration Act." (Doc. 1, Ex. A, p. 7; Doc. 7, Ex. D, pp. 16-17). Both the Branch Manager and Broker contracts also include the following provision:

> The decision or award of the arbitrator shall be final, binding, and enforceable. The decision of the arbitrator shall be in writing and shall set forth in reasonable detail the basis for the decision. Application may be made to any court of competent jurisdiction for judicial acceptance of the arbitration award and enforcement, as the law of the state having jurisdiction may require or allow.

*Id*. The California case was removed to a federal court, which enforced the arbitration clauses in the Branch Manager and Broker contracts. *See Andraos v. Union Central Life Ins. Co.*, Case No. CV 09-8815 (C.D. Cal. April 11, 2011) (Doc. 30).[3] However, the arbitration was terminated in January 2011 due to defendants' failure to pay their portion of the arbitration fees. (Doc. 40, Ex. A). Prior to the arbitration's termination, defendants raised counterclaims in the instant matter for breach of the Branch Manager and Broker contracts and other claims identical to the those which the parties agreed to resolve through arbitration. (Doc. 39). Shortly after the arbitration was terminated, plaintiff filed a second lawsuit, *Union Central Life Ins. Co. v. Andraos*, No. 1:11-cv-00075 (S.D. Ohio 2011)[4], against defendant John Andraos alleging, *inter alia*, breach of contract of the Broker contract and unjust enrichment under the Branch Manager contract. *Id*. at Doc. 1.

---

[3] "Federal courts may take judicial notice of proceedings in other courts of record" and the undersigned has done so here by obtaining the pleadings and decisions from the California federal court. *See Granader v. Public Bank*, 417 F.2d 75, 82-83 (6th Cir. 1969); *see also Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980).

[4] Hereinafter referred to as the "2011 litigation."

On August 5, 2011, the undersigned ordered the parties to show cause why Andraos' counterclaims should not be dismissed or stayed pending arbitration of such claims. The parties have responded and this matter is ripe for resolution.

**II. Standard of Law**

The Federal Arbitration Act ("FAA") provides that arbitration clauses in commercial contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Where a cause of action is determined to be covered by arbitration, the court "*shall* on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant is not in default in proceeding with such arbitration." 9 U.S.C. § 3 (emphasis added).

"The [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself, or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). "'[U]nless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute[,]'" arbitration should be enforced. *AT & T Technologies, Inc. v. Comms. Workers*, 475 U.S. 643, 650 (1986).

Further, "the Supreme Court has held that the FAA preempts state law regarding arbitration." *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005) (citing *Southland Corp. v. Keating*, 465 U.S. 1, 10-11 (1984)). However, state contract law governs issues of formation, such as validity, revocability, and enforceability, with respect to the underlying

contract as well as the arbitration clause. *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987). *See also Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 377 (6th Cir. 2005).

**III. Analysis**

In response to this Court's show cause order, defendants assert that all litigation related to the instant lawsuit, including the 2011 litigation, should be stayed pending arbitration. (Doc. 64). Defendants contend the arbitration clauses in the Branch Manager and Broker contracts cover plaintiff's claims and defendants' counterclaims in the instant case, as well as plaintiff's claims in the 2011 litigation and, further, that proceeding with either lawsuit could lead to incongruous results in light of their arbitrability.

Plaintiff responds that both parties have waived their rights to pursue arbitration, citing to Andraos' failure to pay its portion of the arbitration fees and plaintiff's refusal to cover these costs. Plaintiff also contends that, pursuant to the choice of law clauses in both the Branch Manager and Broker contracts, the issue of whether the arbitration has been waived should be determined by applying Nebraska law.[5] Lastly, plaintiff speculates that if the Court stays the instant litigation defendants will again fail to pay their arbitration fees, leading to another termination and a return to square one.

In reply, defendants assert that the arbitrator, and not the Court, should decide whether the parties have waived their rights to arbitration, relying on *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) ("the arbitrator should decide allegations of waiver, delay, or a like defense to arbitrability").

---

[5] Notably, plaintiff cites no authority, neither federal nor Nebraska state law, supporting its argument that the parties' failure to pay arbitration fees is an unequivocal action denoting their intent to waive their right to arbitration.

4

In light of the parties' arguments, there are several issues the Court must resolve. First, the Court must decide whether to apply federal law or Nebraska state law[6] in analyzing whether to stay any portion of the instant litigation. Second, the Court must determine whether an arbitrator or the Court should resolve the issue of whether the parties have waived their right to arbitration. Finally, the Court must decide whether to stay all or a portion of the instant litigation as well as the 2011 litigation.

    A.    *Federal law controls the Court's determination regarding a stay of litigation.*

As mentioned above, the FAA preempts state law with regard to arbitration. *Glazer*, 394 F.3d at 451. However, state contract law governs with respect to issues of contract formation. *Perry*, 482 U.S. at 492 n.9. Here, neither party has raised a challenge to the enforceability of either the employment contracts or the arbitration clauses. In fact, the record demonstrates that both parties willingly submitted to arbitration, indicating their acceptance of the enforceability of the arbitration provisions. (Doc. 7, Ex. E, pp. 2-3) (November 2, 2009 correspondence from AAA confirming parties' intent to arbitrate); (Doc. 22, Ex. B, ¶ 28) (demonstrating parties' agreement to remove the California litigation in favor of arbitrating the claims).

While state law controls issues as to formation and contract defenses, no such issues are present in this matter. *See Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 887 (6th Cir. 2002) ("[A]lthough state law may dictate the standards for generally applicable contract defenses . . . the FAA governs the enforceability of arbitration clauses generally."). As the issue in this case is limited to whether the federal litigation should be stayed, federal law controls. *See Glazer*, 394 F.3d at 451.

---

[6]     The Broker Contract and the Branch Manager Contract contain identical choice of law provisions. *See* (Doc. 1, Ex. A, p. 7) ("This Contract will be governed by the laws of the State of Nebraska."); (Doc. 44, Ex. 2, p. 7) (same).

B.  *Whether the parties waived their rights to arbitrate should be determined by the Court.*

The only argument plaintiff presents in opposition to a stay of any litigation is its contention that the parties have waived their rights to arbitration - defendants by not paying their portion of the arbitration fees and plaintiff by refusing to pick up the tab.[7] Defendants argue that federal law controls the issue of waiver but that, regardless, the issue of whether the parties waived their arbitration rights should be determined by the arbitrator and not the Court.

Generally, issues of substantive arbitrability (*e.g.*, whether a dispute is subject to arbitration in the first instance) is a question for the court to decide and issues of procedural arbitrability (*e.g.*, whether prerequisites such as time limits have been met) are for the arbitrator to decide *unless* there is an agreement by the parties to the contrary. *See Howsam*, 537 U.S. at 83 ("The question of arbitrability is an issue for judicial determination *unless the parties clearly and unmistakably provide otherwise*.") (quoting *AT & T Technologies, Inc.*, 475 U.S. at 650) (emphasis added). Substantive arbitrability determinations that are within the purview of the court include issues such as whether a party was fraudulently induced into signing an agreement to arbitrate or whether an arbitration clause applies to a specific controversy arising out of a contract. *See Rent-A-Center, West, Inc. v. Jackson*, -- U.S. --, 130 S.Ct. 2772, 2778 (2010) (courts are to consider challenges to arbitrability based on claims of fraud in the inducement); *O.N. Equity Sales Co. v. Finra Dispute Resolution, Inc.*, No. 1:07cv804, 2008 WL 281788, at *5 (S.D. Ohio Feb. 1, 2008) (courts should determine whether an arbitration clause applies to a particular controversy in an otherwise binding contract). The rationale for limiting a court's

---

[7] Plaintiff's response brief (Doc. 65) notes the existence of waiver as a defense under Nebraska state law, yet cites to no authority in which a federal or Nebraska court has held that non-payment of arbitration fees equates to a party's unequivocal waiver of their right to arbitrate a dispute. Plaintiff further fails to provide any authority from either a federal or Nebraska court supporting its argument that this issue is controlled by Nebraska state law.

jurisdiction to determinations of substantive arbitrability issues is to ensure that parties are not forced to arbitrate matters they did not intend to be subject to arbitration. *Howsam*, 537 U.S. at 83-84.

On the other hand, questions regarding procedural arbitrability "are presumptively *not* for the judge, but for an arbitrator, to decide." *Id*. at 84 (quoting *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964)) (emphasis in original). The presumption is that arbitrators should decide "allegation[s] of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hospital*, 460 U.S. at 24-25. As the Supreme Court explained in *Howsam*:

> [T]he Revised Uniform Arbitration Act of 2000 (RUAA), seeking to 'incorporate the holdings of the vast majority of state courts and the law that has developed under the [FAA],' states that an 'arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled.' RUAA § 6(c), and comment 2, 7 U.L.A. 12-13 (Supp.2002). And the comments add that '*in the absence of an agreement to the contrary, issues of substantive arbitrability . . . are for a court to decide and issues of procedural arbitrability*, *i.e.,* whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, *are for the arbitrators to decide*.' *Id.,* § 6, comment 2, 7 U.L.A., at 13.

*Howsam*, 537 U.S. at 84-85 (emphasis added). Examples of procedural arbitrability questions which should be determined by arbitrators are whether a precondition to arbitration (*i.e.*, providing necessary documents) has been met or whether a party has invoked the right to arbitrate within a specified time limit. *See United SteelWorkers of America, AFL-CIO-CLG v. St. Gobain Ceramics & Plastics, Inc.*, 505 F.3d 417, 419 (6th Cir. 2007) (arbitrators are to determine issues of arbitrability with regard to time limits); *JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388, 392 (6th Cir. 2008) (holding that arbitrator should determine whether a party's failure to provide specific documentation was a condition precedent to arbitration).

Here, the arbitration provisions in both the Branch Manager and Broker contracts explicitly provide that issues of arbitrability are to be determined by an arbitrator: "[a]ny

7

controversy or claim in excess of $15,000.00 arising out of or relating to this Contract or any breach of this Contract, *including any controversy or claim as to its arbitrability* or recission, shall be finally settled by arbitration administered by the [AAA] in accordance with its Commercial Arbitration Rules and the Federal Arbitration Act." (Doc. 1, Ex. A, p. 7; Doc. 44, Ex. 2, p. 7) (emphasis added). The plain terms of these contracts demonstrate that the parties unmistakably intended for the issue of arbitratability to be determined by an arbitrator and not the Court. *See Howsam*, 537 U.S. at 83 (arbitrability issues are for judicial determination unless "the parties clearly and unmistakably provide otherwise."). In light of the parties' intent, the determination of whether the parties' claims are arbitrable should be determined by the arbitrator.

Further, plaintiff's argument that the parties' non-payment of arbitration fees equates to a waiver of arbitration is a procedural issue which should be determined by the arbitrator. The payment of arbitration fees is a condition precedent to arbitration, similar to the required submission of documents and abiding by time limits, which are considered procedural issues to be decided by an arbitrator. *Juiceme, LLC v. Booster Juice Ltd. Partnership*, 730 F. Supp.2d 1276, 1283 (D. Or. 2010) (holding that whether a party's inability to pay arbitration costs constituted a refusal to arbitrate was a dispute for the arbitrator to decide). *But cf. Sink v. Aden Enters., Inc.*, 352 F.3d 1197 (9th Cir. 2003) (affirming district court's finding that defendant was in default for nonpayment of fees *after* arbitrator made specific default determination).[8]

---
[8]

In contrast, a District of Nevada court, relying on *Sink*, held that the defendant's nonpayment of fees constituted a default under 9 U.S.C. § 3 and refused to refer the matter to arbitration. *See Rapaport v. Soffer*, No. 2:10-cv-00935, 2011 WL 1827147, at *2 (D. Nev. May 12, 2011). However, the defendant in *Rapaport* conceded that he would not be able to continue paying the arbitration fees which totaled $16,650.00. *Id*. Here, defendants have not conceded that they are currently unable to pay the arbitration fees. Further, defendants appealed to AAA regarding the seemingly exorbitant fee, exceeding $130,000.00. *See* Doc. 65, Ex. B. In light of the instant defendants' engagement with AAA in attempting to resolve the payment issues, and the huge discrepancy between the fees owed by the defendant in *Rapaport* and here, the Court declines to adopt the Nevada court's approach.

Therefore, whether defendants' nonpayment of arbitration fees amounts to a waiver of arbitration should be decided by the arbitrator, and not this Court.

Plaintiff also argues that AAA's termination of the proceedings represents their determination that the parties have waived the right to arbitrate.[9] Plaintiff's waiver argument amounts to a contention that a stay is inappropriate because defendants defaulted in the arbitration proceedings. *See* 9 U.S.C. § 3 (The court shall enforce a stay of litigation and enforce arbitration, "providing the applicant for the stay is not in default in proceeding with such arbitration."); *see also Konica Minolta Bus. Solutions, U.S.A., Inc., v. Allied Office Prods., Inc.*, No. 2:06-cv-71, 2006 WL 3827461, at *10 (S.D. Ohio Dec. 27, 2006) (quoting *Marie v. Allied Home Mortgage Corp.*, 402 F.3d 1, 27 (1st Cir. 2005) (finding that "default has generally been defined as including a waiver"); *Morewitz v. West of England Ship Owners*, 62 F.3d 1356, 1365 n.16 (11th Cir. 1995) ("Although the [FAA] uses the term 'default,' 9 U.S.C. § 3, the case law on this subject employs the term 'waiver.' *See generally* 3 Fed. Proc., L.Ed. *Arbitration* § 4:24 (1981) ('the term 'default' has been construed as analogous in meaning to the common-law term 'waiver'")).

While it is true that the arbitration did not proceed due to nonpayment of defendants' arbitration fees, there is no evidence in the record that AAA determined defendants defaulted in the arbitration proceedings. Rather, the November 2009 letter from AAA provides that, in the event of non-payment of fees, "the AAA will close the file administratively, return all documents submitted and mark this matter as closed. Once the case is marked closed, *it may only be reopened* by filing a new Demand for Arbitration along with the appropriate filing fee." (Doc. 7, Ex. E, p. 3) (emphasis added). As AAA explicitly providing a mechanism for the

---

[9] Plaintiff asserts that "the arbitrator in this dispute, [AAA], has spoken loud and clear – because the Defendant's failed to pay their share of the arbitration's cost, the arbitration could not proceed." (Doc. 69, p. 2).

9

parties to reopen the matter, the record does not support plaintiff's inference that AAA's termination for nonpayment was a final determination that the arbitration may not proceed.

The arbitration was terminated due to defendants' failure to meet a condition precedent to arbitration. Accordingly, whether the nonpayment of either or both parties is considered a waiver of the right to arbitrate should be determined by the arbitrator, not the Court.[10] *See* RUAA § 6, comment 2, 7 U.L.A., at 13 ("whether . . . conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide."). Moreover, the AAA arbitrators are "more expert about the meaning of their own rule [than the Court and] are comparatively better able to interpret and apply it. In the absence of any statement to the contrary in the arbitration agreement[s], it is reasonable to infer that the parties intended the agreement to reflect that understanding." *Howsam*, 537 U.S. at 85.

The Court concludes, in conformity with the parties' explicit contractual intent, that the question of waiver due to nonpayment of arbitration fees falls within the category of procedural gateway issues which should be determined by the arbitrator.

C. *The instant litigation and the 2011 litigation should be stayed pending the outcome or final decision of arbitration.*

The Sixth Circuit has articulated the steps a court must take in determining whether to stay a case pending arbitration:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the

---

[10] *But cf. Pritchard v. Dent Wizard Int'l Corp.*, 275 F. Supp.2d 903 (S.D. Ohio 2003) (court determined issues regarding arbitrability where plaintiff asserted defendant waived his right to arbitrate by engaging in litigation); *Geo Vantage of Ohio, LLC v. Geovantage, Inc.*, No. 2:05-cv-1145, 2006 WL 2583379 (S.D. Ohio Sept. 6, 2006) (holding that court should determine issue of waiver where challenge to arbitration was substantive and based on ambiguities and inconsistencies in the arbitration clause). These cases are inapposite. Here, plaintiff does not assert that defendants waived their right to arbitrate by engaging in litigation nor is plaintiff challenging the legality of enforcing the arbitration clause.

claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003) (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)). Upon review of factors (1) and (3), the record demonstrates that the parties have agreed to arbitrate certain claims[11] and neither party has raised a federal statutory claim. Accordingly, the Court is limited to determining what matters the parties have agreed to arbitrate and whether to stay a portion or all of the litigation, including the 2011 litigation.

The arbitration clauses contained in both the Branch Manager and Broker contracts provide in full:

> Any controversy or claim in excess of $15,000.00 arising out of or relating to this Contract or any breach of this Contract, *including any controversy or claim as to its arbitrability or recission*, shall be finally settled by arbitration administered by the [AAA] in accordance with its Commercial Arbitration Rules and the [FAA]. If the AAA is not then in existence, the arbitration shall be governed by the Commercial Arbitration Rules last in effect. Any party seeking arbitration must give the other(s) 30 days written notice of that intent. A single United States arbitrator experienced in the life insurance and annuity industry, shall be mutually agreed upon by the parties within 15 days of the receipt of a notice of intent or such longer period as mutually agreed upon by the parties. If an arbitrator can not be mutually agreed upon, the AAA shall select one. The arbitrator shall interpret this Contract pursuant to Nebraska law and shall base any decision or award on applicable law and judicial precedent. Any arbitration shall be conducted in Lincoln, Nebraska, unless the parties mutually agree to another location. The arbitrator(s) shall not, under any circumstances, have any authority to award punitive or exemplary damages.
>
> *All expenses* associated with obtaining and utilizing the services of the AAA and the arbitrator, and as otherwise provided in the Commercial Arbitration Rules, *shall be shared equally by the parties hereto*, and the arbitrator shall request payment separately from each party for these expenses. Each party shall bear its own expenses of preparing for and participating in the arbitration, including attorney and witness fees and discovery costs.

---

[11] This is evidenced by plaintiff's invocation of the arbitration clause when it filed for AAA arbitration and defendants' arbitration filings indicating a willingness to arbitrate. *See* Doc. 7, Ex. E; Docs. 64 and 68.

> The parties may engage in discovery pursuant to the Federal Rules of Civil Procedure, to the extent such discovery is consistent with the purpose of the arbitration and is permitted by the arbitrator.
>
> The decision or award of the arbitrator shall be final, binding, and enforceable. The decision of the arbitrator shall be in writing and shall set forth in reasonable detail the basis for the decision. Application may be made to any court of competent jurisdiction for judicial acceptance of the arbitration award and enforcement, as the law of the state having jurisdiction may require or allow.

(Doc. 1, Ex. A, p. 7-8; Doc. 44, Ex. 2, p. 7) (emphasis added).

With respect to the second *Fazio* factor, what the parties agreed to arbitrate, the first sentence of the provision identifies that the parties intended to arbitrate "[a]ny controversy or claim in excess of $15,000.00 *arising out of or relating to*" the Branch Manager and Broker contracts. *Id*. There is no dispute among the parties that they, at a minimum, intended to arbitrate issues arising out of the Branch Manager and Broker contracts, *i.e.*, the counterclaims made by defendants in this case. However, defendants contend that the arbitration provisions also cover disputes related to the promissory notes forming the basis of the instant lawsuit. Plaintiff does not directly dispute this contention, but simply asserts that the promissory notes do not contain similar arbitration provisions. (Doc. 69, p. 2).

The instant lawsuit is premised on allegations that defendants defaulted on two promissory notes, one dated September 4, 2007 and the other January 22, 2009. (Doc. 1, Exs. B, C). The parties entered into the promissory notes due to the contractual employment relationship between Union Central and Andraos. The parties entered the Broker contract on September 1, 2007, which created a relationship whereby Andraos would solicit and sell Union Central's insurance products. (Doc. 1, ¶ 6). The first promissory note, dated September 4, 2007, was for "ramp-up costs" for Andraos' insurance agency. (Doc. 7, Andraos Aff., ¶ 11). The second promissory note was executed in January 2009 as a temporary fix after Union Central rejected

Andraos' reimbursement request. (*Id.*, ¶ 12; Doc. 1, Ex. B, C).

Both notes contain the following provision, "Payments are to be made pursuant to and in accordance with the terms and conditions of the attached [letter], *and the Branch Manager Contract*." *Id.* (emphasis added). Moreover, plaintiff's complaint alleges that the September 2007 promissory note was related to the Broker Contract and contained a provision that a termination of the Broker Contract constituted an event of default of the note. (Doc. 1, ¶¶ 6-8, 10). Accordingly, by plaintiff's own allegations and the terms of the promissory notes, the notes appear to be significantly related to the Branch Manager and Broker contracts which formed the employment relationship between the parties. As the arbitration clauses provide that disputes "arising out of *or relating to*" the Broker and Branch Manager contracts should be arbitrated, it appears that the parties intended to arbitrate the claims raised by plaintiff in the instant litigation.

In light of the strong policy favoring arbitration agreements and the instant determination that the parties' explicitly agreed that disputes arising from or relating to relating to the employment contracts are both subject to arbitration, the Court recommends that the entire case be stayed, including the related 2011 litigation, pending the outcome of arbitration and the arbitrator's determination as to whether the arbitration clause covers the promissory notes. As previously noted by this Court, the 2011 litigation involves plaintiff's allegations of breach of contract stemming from the Broker contract and unjust enrichment pertaining to the Branch Manager contract. *See* Doc. 47, Order to Show Cause. The issues raised in this matter and in the 2011 litigation relate to controversies arising out of the employment contracts and, consequently, are similarly subject to arbitration. Thus, the Court recommends that both cases be fully stayed pending the outcome of arbitration.

The Court is sympathetic to plaintiff's concerns that defendants will again fail to pay

their arbitration fees. However, the Court is not inclined to adopt plaintiff's assumption that defendants have acted in bad faith. The record does not demonstrate that defendants purposefully failed to pay the arbitration fees in an attempt to delay the proceedings or prejudice plaintiff. Rather, defendants appeared willing to engage in arbitration but simply were unable to pay the costs, which exceeded $130,000.00. Defendants' appealed to the arbitration panel[12] and argued that the costs were prohibitive, demonstrating their engagement in the process as opposed to a deliberate attempt to delay proceedings. *See* Doc. 65, Ex. B. This is far from conduct inconsistent with a desire to arbitrate. Though plaintiff questions defendants' change of tack, defendants' motives are unknown and the Court will not engage in speculation regarding their current ability or willingness to pay arbitration fees.

For the foregoing reasons, the undersigned recommends that all litigation pertaining to *Union Central Life Ins. Co. v. Andraos, et al.*, No. 1:09-cv-758 (S.D. Ohio 2009) and *Union Central Life Ins. Co. v. Andraos*, No. 1:11-cv-00075 (S.D. Ohio 2011), be stayed pursuant to 9 U.S.C. § 3 pending arbitration of the parties' claims and counter-claims or a decision by the arbitrator that such claims are not arbitrable or that arbitration has in fact been waived by the nonpayment of fees.

## IT IS THEREFORE RECOMMENDED:

1. All litigation relating to *Union Central Life Ins. Co. v. Andraos, et al.*, No. 1:09-cv-758 (S.D. Ohio 2009) and *Union Central Life Ins. Co. v. Andraos*, No. 1:11-cv-00075 (S.D. Ohio 2011) should be **STAYED** pursuant to 9 U.S.C. § 3 pending arbitration of the parties' claims and counter-claims or a decision by the arbitrator that such claims are not arbitrable or that arbitration has in fact been waived by the nonpayment of fees.

---

[12] There is no evidence in the record regarding the outcome of defendants' motion to the arbitration panel.

2. The parties should be directed to file status reports every 60 days apprising the Court of the status of arbitration proceedings.

3. These cases should be administratively stayed on the docket of the Court, subject to reopening by motion of a party upon the final termination of arbitration proceedings.


10/21/2011                                         s/Karen L. Litkovitz
Date                                               KAREN L. LITKOVITZ
                                                   United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Union Central Life Insurance Company,<br>    Plaintiff-Counter Defendant, | Case No. 1:09-cv-758 |
| v. | Weber, J.<br>Litkovitz, M.J. |
| John Eftin Andraos, *et al.*,<br>    Defendants-Counter Claimants. | |
| Union Central Life Insurance Company,<br>    Plaintiff, | Case No. 1:11-cv-75 |
| v. | Weber, J.<br>Litkovitz, M.J. |
| John Eftin Andraos,<br>    Defendant. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).